**Citation for Personal Service –RESIDENT**

Case Number: **2024DCV-0539-E**

THE STATE OF TEXAS

NOTICE TO DEFENDANT: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

TO:  **City Of Corpus Christi, Texas**
     **c/o Mayor Paulette Guajardo**
     **1201 Leopard St.**
     **Corpus Christi, Tx 78401**
the Defendant,

GREETING: You are commanded to appear by filing a written answer to the **Plaintiff's Original Petition, Exhibits A-D** at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the **Honorable David Klein**, **148th District Court** of Nueces County, Texas at the Courthouse of said County in Corpus Christi, Texas. Said Petition was filed on the 9th day of February, 2024. A copy of same accompanies this citation.
The file number of said suit being Number:  **2024DCV-0539-E**

The style of the case is: **Priscilla Tryon Cambric vs. City of Corpus Christi, Texas, Tracey Cantu, Al Raymond**

Said Petition was filed in said court by **Matthew S. Manning**, attorney for Plaintiff, whose address is 710 Mesquite St., Corpus Christi, Tx 78401.

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly mail the same according to requirement of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said court at Corpus Christi, Texas, this 13th day of February, 2024.

**ANNE LORENTZEN, DISTRICT CLERK**
NUECES COUNTY, TEXAS
901 LEOPARD STREET, ROOM 313
CORPUS CHRISTI, TEXAS 78401

BY: _____, Deputy
                Laura Munoz

## RETURN OF SERVICE

**2024DCV-0539-E**    **PRISCILLA TRYON CAMBRIC**    148TH DISTRICT COURT
**VS.**
**CITY OF CORPUS CHRISTI, TEXAS,**
**TRACEY CANTU, AL RAYMOND**

_____
Name

**ADDRESS FOR SERVICE**
**City of Corpus Christi, Texas**
**C/O Mayor Paulette Guajardo**
**1201 Leopard St.**
**Corpus Christi, Texas  78401**

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20____, at _____ o'clock ___. m., and executed in
_____ County, Texas by delivering to the within named defendant in person, a true copy of this Citation with the
date of delivery endorsed thereon, together with the accompanying copy of the _____
_____, at the following times and places, to-wit:

| NAME | DATE/TIME | PLACE, COURSE & DISTANCE FROM COURTHOUSE |
|------|-----------|------------------------------------------|
|      |           |                                          |

And not executed as to the defendant(s), _____
The diligence used in finding said defendant(s) being:

_____

and the cause of failure to execute this process is:

_____

and the information received as to the whereabouts of said defendant(s) being:

_____

| Fees: | | _____, | Officer |
|-------|---|---|---|
| Serving Petition and Copy | $_____ | _____, | County, Texas |
| Total | $_____ | By _____, | Deputy |

## COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.

In accordance with Rule 107:  The officer or authorized person who serves, or attempts to serve, a Citation shall sign the return.  The
signature is not required to be verified.  If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the
return shall be signed under penalty of perjury and contain the following statement:
"My name is _____, my date of birth is _____, and my
            (First, Middle, Last)
address is _____
            (Street, City, State, Zip, Country)
I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.
Executed in _____ County, State of _____, on the _____ day of
of _____, 20____.

                                    _____
                                    Declarant / Authorized Process Server

                                    _____
                                    ID# & Expiration of Certification

Filed
2/9/2024 2:09 PM
Anne Lorentzen
District Clerk
Nueces County, Texas

CAUSE NO. ___2024DCV-0539-E___

| | | |
|---|---|---|
| PRISCILLA TRYON CAMBRIC | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| | § | |
| | § | |
| VS. | § | _____ JUDICIAL DISTRICT |
| | § | |
| CITY OF CORPUS CHRISTI, TEXAS, | § | |
| TRACEY CANTU, AND AL RAYMOND | § | NUECES COUNTY, TEXAS |
| *Defendants* | § | |
| | § | JURY TRIAL DEMANDED |
| | § | |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **PRISCILLA TRYON CAMBRIC**, referred to herein as Plaintiff, complaining of Defendants **CITY OF CORPUS CHRISTI, TEXAS** (hereinafter "City"), **TRACEY CANTU** (hereinafter "Ms. Cantu"), Assistant Director, Development Services, Code Compliance Department and **AL RAYMOND** (hereinafter "Mr. Raymond"), Director, Development Services Department, in their individual capacities, hereinafter called collectively "Defendants," and for cause of action, would respectfully show unto the Court and jury the following:

## I.  NATURE OF THE CASE

**THE CLAIM:** Plaintiff advances her claim under 42 U.S.C. §1983. The City of Corpus Christi, Texas, by and through the actions of Defendants Cantu and Raymond, has engaged in impermissible selective enforcement with respect to its code enforcement practices concerning alleged substandard buildings in the City of Corpus Christi, Texas, in violation of the Fourteenth Amendment of the United States Constitution.

The City of Corpus Christi Code Enforcement Division has repeatedly cited Plaintiff's property and sought to demolish her property, despite there being a morass of dilapidated buildings throughout the City of Corpus Christi, with many in demonstrably bad shape being situated within mere blocks of City Hall. The City of Corpus Christi, Texas has a pattern, practice, and custom of

1

selective enforcement, demonstrated by its non-enforcement on many properties throughout the City and seemingly insatiable enforcement on Plaintiff's property.

This selective enforcement has injured Plaintiff, the owner of the sole remaining Black building of its particular historic significance, the Ebony Recreation Spot (formerly known as the Skylark Club and the Fabulous Lounge), with respect to the City's orders to demolish the building in spite of the recognition by the Texas Historical Commission, Texas Dancehall Preservation, Inc., and the Nueces County Historical Commission that this building is of undeniable cultural significance to this community.

## II.    DISCOVERY CONTROL PLAN LEVEL

Plaintiff intends that discovery be conducted under Discovery Level 2 of the Discovery Control Plan, Rule 190.3 of the Texas Rules of Civil Procedure.

## III.    PARTIES

1.    Plaintiff, **PRISCILLA TRYON CAMBRIC** is a resident of Nueces County, Texas. The last three digits of her driver's license are 114.

2.    Defendant **CITY OF CORPUS CHRISTI, TEXAS** is a political subdivision of the State of Texas and the City of Corpus Christi, Texas, Code Enforcement Division is an agency operated thereunder, falling under the City's Development Services Department.

3.    The City of Corpus Christi, Texas, Code Enforcement Division is funded and operated by the City of Corpus Christi, Texas City Council. Mayor Paulette Guajardo is the chief elected officer of the City of Corpus Christi, Texas. City Manager Peter Zanoni is the chief executive officer of the City of Corpus Christi, Texas.

4.    Mayor Guajardo and City Manager Zanoni are responsible for implementing the policies and decisions of the City of Corpus Christi, Texas City Council as the City's primary administrators.

5.     Mayor Guajardo, City Manager Zanoni, and the City of Corpus Christi, Texas City Council are tasked with appropriating, reviewing, and implementing the City of Corpus Christi, Texas, Code Enforcement Division's budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.

6.     Defendant City of Corpus Christi, Texas may be served by and through Mayor Paulette Guajardo, 1201 Leopard St., Corpus Christi, Texas 78401.

7. Defendant **TRACEY CANTU** is Assistant Director of Development Services, Code Compliance Division for the City of Corpus Christi, Texas, and at all times material herein was a code compliance officer acting in the course and scope of her employment for Defendant City of Corpus Christi, Texas. She may be served at 2406 Leopard St., 1st Floor, Corpus Christi, TX 78401, or wherever she may be found. Defendant Cantu is being sued in her individual capacity.

8. Defendant **AL RAYMOND** is Director of Development Services for the City of Corpus Christi, Texas, and at all times material herein was acting in the course and scope of his employment for Defendant City of Corpus Christi, Texas. He may be served at 2406 Leopard St., Corpus Christi, TX 78401, or wherever he may be found. Defendant Raymond is being sued in his individual capacity.

## IV.    JURISDICTION

9. The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.

10. This Court has jurisdiction of the parties because they are all Texas residents and/or conducting business/government in the state of Texas.

11. This Court also has concurrent jurisdiction with the federal district court over this suit under 42 U.S.C. §1983[3]; and the Southern District of Texas would have supplemental jurisdiction over the state law claims contained therein, as they are so related to claims in the

---

[3] *Haygood v. Drown*, 556 U.S. 729 (2009).

action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[4]

12. Venue in Nueces County is proper in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of events or omissions giving rise to this lawsuit occurred in this county.

13. Venue would also be appropriate in the Southern District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in Nueces County, Texas, which is in the Corpus Christi Division of the Southern District of Texas.

## V.  APPEAL FROM THE CITY OF CORPUS CHRISTI CITY COUNCIL'S DECISION TO RATIFY THE BUILDING STANDARDS BOARD RECOMMENDATION TO DEMOLISH THE BUILDING

14. Pursuant to subsection (c) of §13-24 of the City of Corpus Christi Code of Ordinances, Plaintiff commences this suit – a distinct cause of action but simultaneously tantamount to an appeal – from the decision of the Corpus Christi City Council. As mandated by the statute, "The decision of the city council shall be final unless the aggrieved party appeals by instituting suit for that purpose in any court having jurisdiction within fifteen (15) days from the date on which the decision of the city council was rendered."

15. Plaintiff instituted this suit within the 15 day period specified by the ordinance.

## VI.  FACTS AND ALLEGATIONS

16. The building at issue — at different times known as the Ebony Recreation Spot, the Skylark Club, and the Fabulous Lounge — is the only remaining structure of its historical significance to African-Americans left standing in this community, particularly in the Northside area known as "The Cut." The building is located at 1214 ½-20 N. Staples St., Corpus Christi, TX 78401.

---

[4] 28 U.S.C. § 1367.

17. Constructed in approximately 1940[5], the building played host to innumerable luminaries in the Black music and entertainment space, including but not limited to James Brown, Ray Charles, Aretha Franklin, B.B. King, and Roy Tipton.

18. The building was owned and operated for decades by Mr. Atlee Chapman, a prominent Black business man and politician in the City of Corpus Christi.

19. Prior to the appeal to the City Council that is part of the basis of this claim, the City of Corpus Christi issued multiple criminal citations on the building (all of which have been continuously reset, awaiting the outcome of the Building Standards Board's decision) and demanded the appearance of Plaintiff before the Building Standards Board on several occasions, including the occasion on 28 September 2023, where the Board voted to demolish the building in the absence of Plaintiff and her counsel, who sought a continuance due to counsel traveling out of town for work, which was communicated to the Board.

20. In multiple appearances before the Building Standards Board and the City of Corpus Christi City Council, Defendants Cantu and Raymond appeared before the respective bodies, arguing vehemently that the building is "substandard" and thus the Board should recommend its demolition.

21. To date, the City of Corpus Christi has not presented evidence, on information and belief, of a *single* complaint by a citizen concerning this building. In contrast, the City of Corpus Christi's Code Enforcement has admitted, on information and belief, that all complaints on the building have been generated by the agency itself.

---

[5] *See* https://texashistory.unt.edu/ark:/67531/metapth1310487/m2/1/high_res_d/Northside_History_Project_Rep%20ort.pdf at pg. 86 (last visited 6 February 2024).

5

22. The City has claimed that debris from the roof has blown into the yard of nearby residents – of which there are virtually none – yet has not once presented evidence of complaints or requests regarding the building and potential enforcement by these purported citizens.

23. In advance of the Building Standards Board's decision on whether to recommend demolition of the Ebony Recreation Spot, the Texas Historical Commission[6] and Texas Dancehall Preservation, Inc.[7] sent letters of support, requesting that the City of Corpus Christi, Texas suspend its consideration of demolition and allow Mrs. Cambric the opportunity to seek historical preservation protection and renovation for the building. The letters from both organizations encouraged the City of Corpus Christi, Texas to afford Mrs. Cambric the opportunity and sufficient time to restore this building, considering its extraordinary historical significance.

24. The aforementioned letters were sought and procured by a historic preservation officer employed by the City of Corpus Christi. Plaintiff also conferred with this historic preservation officer, permitting him access to the property for the purpose of taking drone photos of the property on 20 July 2023.

25. In late July or early August 2023, Ms. Brandy Black, an architectural historian with Stantec, an engineering firm, conducted a survey on the property with Plaintiff's cooperation.

26. In each prior appearance before the Board, Plaintiff informed the Board of her plans to seek historical preservation of the building and designation by appropriate authorities as a historic landmark, mentioning specifically the Untold Markers program run by the Texas Historical Commission.

---

[6] Exhibit A.
[7] Exhibit B.

27. In one such prior appearance, one of the members of the Building Standards Board suggested that the Board table the discussion of razing this building indefinitely, only to be counseled by a member of the City Attorney's office that the Board was unable to take such an action.

28. Plaintiff also secured a visual inspection report on the building in August 2023, which was tendered to the Building Standards Board.

29. As mentioned in paragraph 19, *supra*, the Building Standards Board voted, in the absence of Plaintiff and her counsel, to recommend demolition of the property.

30. On 23 October 2023, Plaintiff appealed the Building Standards Board's decision to the City of Corpus Christi City Council.

31. On 12 December 2023, Plaintiff and her counsel appeared before the City of Corpus Christi City Council, arguing that the Building Standards Board's decision was in error and in contravention to the spirit of the statute and the importance of preserving such an important cultural landmark in this community, and specifically to the Black community.

32. The City Council voted to adopt the Building Standards Board's recommendation; however, the vote could not carry the day as the Council lacked a quorum. The matter was reset for presentation to the City Council on 9 January 2024.

33. On 9 January 2024, the City of Corpus Christi, Texas City Council issued an order modifying the 28 September 2023 order of the Building Standards Board, ordering that Plaintiff's property at 1214 ½-1220 N. Staples St., Corpus Christi, TX 78401 be demolished.

34. Following lengthy discussion, the City Council ordered Plaintiff to erect a fence around the entire property, including the sidewalk abutting the front façade of the building. The City Council also ordered Plaintiff to board up and "secure" the first floor of the building to ensure no unauthorized entry to the property by vagrants.

35. The City Council also mandated that Plaintiff procure a structural engineer's report on the building within sixty (60) days of its order. Such time period has not yet elapsed by the time of the filing of this petition.

36. At the time this order was promulgated, certain members of the City Council sought to have the City's "right" to move forward with demolition upon alleged noncompliance vest immediately. Counsel for Plaintiff objected at the time, citing due process concerns. The City disregarded Counsel's objections on the advice of its City Attorney, electing to try to impose an automatically enforceable order for demolition if non-compliance was alleged to be found.

37. The genesis of the mandate for the fencing on the sidewalk came from comments made by Councilmember Dan Suckley on 9 January 2024, who indicated that he thought the fencing appropriate due to the large, neon Ebony Recreation Spot sign affixed to the side of the building, and his concern that it might fall and injure someone walking below.

38. This occurrence was extremely unlikely, considering this building is virtually by itself in the Washington-Coles area of town, which has largely been deserted following decades of disinvestment and a recent "voluntary" relocation program which caused many residents to leave.

39. Notwithstanding this unlikelihood, Plaintiff, seeking to assuage the City Council's safety concerns, removed the sign from the building completely. Neither Code Enforcement nor the City Council requested such a measure, but Plaintiff did so, at her own expense.

40. Plaintiff also incurred the expense of adding additional fencing to the existing fencing already in place.

41. In a letter dated 25 January 2024, Ms. Tracey Cantu, Assistant Director, Development Services – Code Compliance Division, informed Counsel for Plaintiff that the City was of the

opinion that Plaintiff had been non-compliant, ordering the building be "removed" within 30 days, lest the city remove the building and place a lien on the property to cover the costs, and/or institute criminal prosecutions for the timeframe after 30 days wherein the building has not yet been razed.[8]

42. Earthjustice, the premier nonprofit public interest environmental law organization, is currently representing and advocating for the residents of the Hillcrest/Washington-Coles community, particularly representing the Hillcrest Residents Association and the Citizens Alliance for Fairness and Progress in their complaints before the U.S. Department of Housing and Urban Development (HUD).[9] In their letter dated 5 February 2024, the organization delineated some of the City of Corpus Christi, Texas's recent actions, urging HUD to "put a hold on all actions by the City to fund or build the Inner Harbor desalination plant and demolish any historical structures in the Northside while HUD's investigation of our Title VI and Fair Housing Complaint is pending."[10]

43. The Nueces County Historical Commission has also expressed its support for Plaintiff having the opportunity to seek funds – and have adequate time – to endeavor to renovate this historic building, most recently communicating its support during its meeting on 9 January 2024.

## VII.

## CAUSES OF ACTION

## COUNT ONE
## SELECTIVE ENFORCEMENT

---

[8] Exhibit D.
[9] *See Hillcrest Residents Ass'n and Citizens All. for Fairness & Progress vs. City of Corpus Christi, Texas, et al.*; Fair Housing Act Case No. 06-23-5804-8; Title VI Case No.: 06-23-4011-6; Section 109 Case No.: 06-23-4011-9
[10] Exhibit C.

**Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983 Against Defendants City of Corpus Christi, Texas, Tracey Cantu, and Al Raymond**

44.     Mrs. Cambric repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

45.     Defendants City of Corpus Christi, Texas, Tracey Cantu, and Al Raymond, acting under color of law, deprived Mrs. Cambric of the rights and privileges secured her by the Fourteenth Amendment to the United States Constitution to be free from selective enforcement by government actors.

46.     Accordingly, Mrs. Cambric commences this action pursuant to 42 U.S.C. § 1983.

47.     "It is well-established that, as a general matter, the Equal Protection Clause of the Fourteenth Amendment requires that all similarly situated persons be treated substantially alike."[11]

48.     In order to prevail on a "class of one" selective enforcement equal protection claim, [Plaintiff] must show (1) that they were intentionally treated differently from others similarly situated, (2) that there is no rational basis for the difference in treatment, and (3) that the "government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right."[12]

49.     Proof on the third prong of the analysis must show "…that the selective enforcement was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."[13]

## THE CITY OF CORPUS CHRISTI CODE ENFORCEMENT IS NOT APPLYING THE LAW EQUALLY

50.     A short drive around a two-mile radius of the City of Corpus Christi City Hall shows, demonstrably, the lack of even enforcement by Code Enforcement, shown by the morass of buildings in disrepair.

---

[11] *Lundquist v. City of Pasadena*, 2006 U.S. Dist. LEXIS 87793 (S.D. Tex. December 5, 2006) *rev'd*, 525 F.3d 383 (5th Cir. 2008)(citing *Vulcan Materials Co. v. City of Tehuacana*, 238 F. 382, 388-89 (5th Cir. 2001)).
[12] *Mary v. Brister*, 2019 U.S. Dist. LEXIS 49136, at 8-9 (E.D. La. March 25, 2019)(citing *Vill of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) and Bryan *v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000)).
[13] *Id.*, at 9 (citing *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003)).

10





(ILLUSTRATIONS A-B)





(ILLUSTRATIONS C-D)





(ILLUSTRATIONS E-F)





(ILLUSTRATIONS G-H)



(ILLUSTRATION I)

51.    Many of the buildings in disrepair are within a direct line of sight of City Hall, as seen in Illustration I above.

52.    Several of the buildings are in similar disrepair as Plaintiff's property; however, none, on information and belief, have been advocating for demolition at all; and if advocated for, surely not as vehemently. The orange "No Trespassing" signs – and alternatively sprayed-on signs – on many buildings evidence probable decades in which the properties have sat without being demolished.





(ILLUSTRATION J-K)

16











(ILLUSTRATION L-P)

53.    Allowing such arguably substandard buildings to persist without repeated citation, on information and belief, nor the Assistant Director and Director of the City Department advocated for their demolition creates an undeniable appearance of selective enforcement.

54.    This is especially true considering the City has allowed both the old county court-house[14] and Hoover Hotel – both a stone's throw from City Hall – to remain standing, despite being in clear disrepair[15]:

---

[14] It is unclear as to what if any authority the City of Corpus Christi has over the old county courthouse, considering it is County property, and thus may not be subject to the purview of the City of Corpus Christi Code Enforcement in any regard. It is illustrative to the point of different approaches – e.g. preservation vs. demolition – but may not be illustrative as to the point of selective enforcement if outside of the City's purview.

[15] See Exhibits E-H.







(ILLUSTRATIONS Q-S)

55.    Most of these buildings, on information and belief, have neither a Black owner nor the immense cultural significance present in Plaintiff's building.

56.    Moreover, most of these structures are in moderately to well-populated areas, with respect to both structures and people. Plaintiff's building, as mentioned *supra*, lies out on its own at the edge of a nearly-deserted neighborhood.

57.    The City has also selectively enforced the law as it relates to arguably substandard structures with historical significance.

58.    Heritage Park, a prominent village of historic homes, was created on information and belief, after the City of Corpus Christi purchased and relocated a number of the homes to their current resting places. Many of the historic markers show that the City itself was involved in the preservation of the properties for the heritage of the City.























(ILLUSTRATIONS T-EE)

59.    These properties, while preserved long ago, were preserved, on information and belief, with the blessing and cooperation of the City.

60.    Plaintiff has not been afforded an adequate opportunity, despite repeated references to her intention to seek historic preservation status, to do so. Other properties, like the Ritz Theater, have been afforded the opportunity to seek such preservation and restoration despite languishing, shuttered, for decades.

61.    The location of Plaintiff's property – a historical Black, historically disinvested enclave of town – cannot go without mention. The area has been and is still the subject of a "voluntary" relocation program, environmental justice issues, and myriad civil rights issues related to the construction of the new Harbor Bridge.

62.    The selective and Draconian enforcement of Plaintiff's property belies an effort to continue razing the community in which the property lies. Were the sole impetus "enforcement" or "beautification," City of Corpus Christi Code Enforcement would be equally focused on seeking remedies for the buildings illustrated in this petition and the myriad others throughout the City that are similarly situated.

63.    The selective treatment of Plaintiff by the Defendants, collectively, is intentional, on information and belief.

64.    There is no rational basis for the enforcement to which Plaintiff is subject while myriad other buildings in equal or worse condition are not enforced and targeted in the same manner, if at all.

65.    This treatment of Plaintiff, on information and belief, is motivated by improper considerations, including but not limited to the community it lies in and the predominant race of those in the community, including Plaintiff.

## COUNT TWO
### *Monell* Claim against CITY OF CORPUS CHRISTI, TEXAS

66.    Plaintiff incorporates by reference all of the foregoing and further alleges the following:

67.    At all material times, Code Enforcement agents of the City of Corpus Christi acted under color of state law, as agents of Defendant City of Corpus Christi, Texas.

68.    Defendant Al Raymond was and is the Defendant's policymaker for all matters related to the Code Enforcement for the City of Corpus Christi, Texas, having been delegated the policy-making authority by the City of Corpus Christi City Council, by and through the City Manager.

69.    Consequently, the City of Corpus Christi has, had, or ratified the following policies, customs, and/or practices in place when Plaintiff's property was slated for demolition:

   a.  Selective enforcement of allegedly substandard properties.

   b.  Selective allowance of certain historic properties to have adequate time to seek historic preservation status, while not affording others the same reasonable time to seek such status.

28

    **c.** Selective application of criteria for demolition.

**70.** Director Raymond and his command staff were all deliberately indifferent to the natural byproducts of this policy, practice, and/or custom, of which he was aware, authorized, ratified, accepted, exacerbated, and encouraged, instead of rectifying it and ensuring equal application of the law.

**71.** It was clear that a constitutional violation was and is a very likely outcome of the ratification, adoption, and promotion of this policy.

**72.** Director Raymond and his command staff knew or should have known that selective enforcement of the building standards in the City of Corpus Christi would create a divestment of the rights of those against whom enforcement was selectively sought, to wit: their rights to equal protection of the laws under the Fourteenth Amendment.

**73.** These policies, *supra*, were actually known, constructively known, and/or ratified by the City of Corpus Christi and its policymakers, including Director Raymond, and were promulgated with deliberate indifference to Mrs. Cambric's rights under the United States Constitution. This policy made it highly likely that such constitutional violations as those previously described would occur, under color of state law. The previously mentioned policy was a moving force of Mrs. Cambric's constitutional deprivations and injuries.

## VIII.
## <u>DAMAGES</u>

74. Mrs. Cambric repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

75. Plaintiff seeks injunctive and monetary relief and for judgment of all the other relief to which she deems herself entitled.

76. As a direct and proximate result of the occurrence underlying this lawsuit, Mrs. Cambric will suffer:

    a. The irreparable and irredeemable loss of her historic property.

## IX.
## <u>ATTORNEY'S FEES</u>

77. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## X.

## JURY DEMAND

78.    Plaintiff respectfully requests a jury trial in this matter.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:     (361) 887-1031
Facsimile:     (361) 887-0903

By: */s/ Matthew S. Manning*
    MATTHEW S. MANNING
    State Bar No.: 24075847
    General Correspondence Email:
    matt@wcctxlaw.com
    **\* E-Service Email: service@wcctxlaw.com**
    **\* E-Service is only accepted at the above**
    **designated e-service e-mail address.**

ATTORNEY FOR PRISCILLA CAMBRIC

30

# TEXAS HISTORICAL COMMISSION

*real places telling real stories*

July 27, 2023

Robert Kurtz, Historic Preservation Officer
Land Development | Development Services
City of Corpus Christi
2406 Leopard Street
Corpus Christi, Texas 78401

RE: Skylark Club/ Fabulous Lounge/Ebony Recreation Spot, 1214-1220 N. Staples, Corpus Christi, Nueces
    County, Texas

Dear Mr. Kurtz:

I have reviewed our files regarding the building at 1214-1220 N. Staples, Corpus Christi. The property served
a variety of businesses through the mid-20th century, most importantly music venues known as the Skylark
Club, and later the Fabulous Lounge. During the Jim Crow period in Corpus Christi, rhythm & blues and
experimental modes of jazz played by African American musicians were performed for African American
audiences only in nightclubs such as the Skylark Club. Some Anglo and Hispanic members of the Corpus
Christi swing scene would often visit this neighborhood (known as "The Cut") and participate in jam sessions
in venues such as the Down Beat, In & Out, Hoot Club, Skylark Terrace, Club Alabam, and the Cotton Club,
playing live music for predominantly – but not exclusively – Black audiences. Of these venues, only the
building at 1214-1220 N. Staples is still standing.

Historic music venues and dance halls are integral to understanding Texas' rich cultural heritage, and the Skylark
Club/Fabulous Lounge is eligible for listing in the National Register of Historic Places under Criterion A in the areas
of Entertainment and Ethnic Heritage/Black at the state level of significance. The building stands as a rare and fragile
example of a night club devoted solely to these forms of popular music in Corpus Christi, and we encourage the city
and property owner to take steps to secure and preserve this significant property.

If you have any questions, you may contact me at (512) 463-6013 or greg.smith@thc.texas.gov. Thank you for
your interest in the National Register and in preserving Texas' cultural heritage.

Sincerely,

Gregory Smith
National Register Coordinator



**EXHIBIT**

A

2024DCV-0539-E



July 27, 2023

Robert Kurtz
Historic Preservation Officer, Department of Development Services
2406 Leopard Street, Suite 100
Corpus Christi, TX 78408

Dear Robert:

Texas Dance Hall Preservation, Inc., has reviewed the available information concerning the Ebony Recreation Spot, formerly known as the Skylark Club and the Fabulous Lounge, located at 1214–1224 North Staples Street in Corpus Christi. I am writing today to encourage the City of Corpus Christi to table any action related to demolition and give the property owner sufficient time to determine whether this building can feasibly be secured, stabilized, and made weathertight.

The Ebony Recreation Spot is historically and architecturally significant as a fairly rare example, statewide, of a surviving urban dance hall from the mid-20th century. While hundreds of dance halls were built during the late 1800s and early to mid-1900s, very few of them remain.

The Ebony Recreation Spot meets the registration requirements for a dance hall as established by Texas Dance Hall Preservation and used, in part, to determine eligibility for the National Register of Historic Places. Other examples of long-vacant dance halls that have been recently rehabilitated and put back into productive use include Lerma's (San Antonio), the Eldorado Ballroom (Houston), and the Bellville Turnverein Pavilion (Bellville). All of these utilized a combination of historic tax credits, grants, and other funds — made possible by National Register eligibility — to complete the projects. In two of these cases, the building was being considered by the City for demolition before it was saved. Today, these dance halls and ballrooms are vibrant community spaces and are expected to catalyze economic development in the immediately surrounding area.

Texas Dance Hall Preservation works with dance hall owners to provide technical assistance and consulting during restoration or rehabilitation projects. We can assist property owners with funding strategies, historic tax credit projects, connecting hall owners to specialized building professionals, etc. We have already spoken with Matt Manning, the property owner's attorney, regarding the potential historic designations available for the property and the financial incentives available for the rehabilitation of this historic building, including state and federal tax credits; grants such as the Texas Preservation Trust Fund grant program, Texas Dance Hall Preservation's Preservation Fund grant program, and others; state sales tax exemptions on construction labor for properties listed on the National Register and on "amusement services" when the building is returned to productive use; and the Property Assessed Clean Energy (PACE) program, which can assist with financing for energy-efficient building systems.

3005 S Lamar Blvd, Ste D-109 #315, Austin, TX 78704 • 512-400-4315 • texasdance[...]

EXHIBIT

B

In 2019, Texas Dance Hall Preservation developed a toolkit for "mothballing" vacant buildings. We will be happy to provide this to the property owner and their building professionals at no charge, to assist in making this building secure and weathertight while future plans can be considered.

Texas Dance Hall Preservation is currently documenting extant dance halls in the Hurricane Harvey disaster area, with a grant from the National Park Service, and our historic resources survey team is in touch with the owner of this property, with plans to document the Ebony Recreation Spot next week, on Thursday, August 3. The photographs and information collected during that visit will provide more information about the condition of the building and help to inform the property owner's decision-making about next steps.

We request that the City of Corpus Christi defer any action on this building and allow us to work with the property owner to determine whether and how this building could be put back on the City's tax rolls and once again contribute to the economic vitality of this neighborhood.


Very best regards,

*Steph McDougal*

Steph McDougal, Past President, Texas Dance Hall Preservation Board of Directors

On behalf of Bethany Wolf, Executive Director


CC:

Mrs. Patricia Cambric

Matt Manning, Esq.

Gregory Smith, Texas Historical Commission

2024DCV-0539-E

# EARTHJUSTICE
### BECAUSE THE EARTH NEEDS A GOOD LAWYER

February 5, 2024

*Sent via email*

Karen Reckley
Equal Opportunity Specialist
Region VI Office of Fair Housing and Equal Opportunity
U.S. Department of Housing and Urban Development
Karen.R.Reckley@hud.gov

Imron Bhatti
Compliance Branch Chief
Office of Fair Housing and Equal Opportunity
U.S. Department of Housing and Urban Development
Imron.A.Bhatti@hud.gov

Re:  *Hillcrest Residents Ass'n and Citizens All. for Fairness & Progress vs.*
*City of Corpus Christi, et al.*
Fair Housing Act Case No. 06-23-5804-8
Title VI Case No.: 06-23-4011-6
Section 109 Case No.: 06-23-4011-9

Dear Ms. Reckley and Mr. Bhatti,

Recently, the City of Corpus Christi has taken significant actions to move forward with its planned Inner Harbor Desalination plant in the historically Black Hillcrest neighborhood. At the same time that the City is rapidly moving forward on siting yet another industrial facility in our already overburdened neighborhood, it also continues to ignore that we still live here and has taken further actions to erase the history of the Northside area. These actions discriminate against the residents of Hillcrest and the Northside neighborhoods and violate Title VI of the Civil Rights Act and the Fair Housing Act. **We urge HUD to put a hold on all actions by the City to fund or build the Inner Harbor desalination plant and demolish any historical structures in the Northside while HUD's investigation of our Title VI and Fair Housing Complaint is pending**.

EXHIBIT

C

Specifically, the City's recent actions include:

1. Voting 6-3 on January 23 and 30, 2024 to move forward on agenda items related to the funding, construction, and power delivery of the Inner Harbor Desalination Plant, including applying for additional federal funds from the U.S. Bureau of Reclamation,[1] despite significant public comment and opposition from Hillcrest residents and other community members.[2] Notably, the new estimated cost of the plant has risen to $758 million, and the plant size has expanded to 30 million gallons per day, up from the originally proposed 20 million gallons per day.[3]

2. Moving forward on permitting for the Inner Harbor facility, including receiving a draft water discharge permit from the Texas Commission on Environmental Quality for the Inner Harbor facility.[4]

3. Proposing to demolish the Ebony Recreation Spot, which is the only remaining structure of historical significance to African-Americans left in the Northside area, when the owner is seeking additional time to restore the building and preserve the historical significance.[5]

**We request to meet with you as soon as possible to discuss these recent actions by the City and HUD's ongoing investigation of our complaint.** Thank you for your attention to this urgent matter.

---

[1] *See* https://corpuschristi.legistar.com/MeetingDetail.aspx?ID=1132497&GUID=034324C4-A89B-4C09-BC6B-7902671925C7&Search=; https://corpuschristi.legistar.com/MeetingDetail.aspx?ID=1132501&GUID=67D72258-CD4A-48DB-9158-818DAB823029&Search=; https://news.cctexas.com/news/city-approves-pathway-forward-for-the-construction-of-a-new-water-treatment-plant; https://news.cctexas.com/news/releases-20240131-6899444.

[2] *See* https://www.caller.com/picture-gallery/news/local/2024/01/25/corpus-christi-residents-speak-on-inner-harbor-desalination-plant-plans/72329474007/; https://youtu.be/4aeFCt5sYM0; https://www.kristv.com/news/local-news/in-your-neighborhood/corpus-christi/corpus-christi-city-council-approves-desalination-project.

[3] *See* https://www.kristv.com/news/local-news/in-your-neighborhood/corpus-christi/city-council-approves-first-of-two-votes-for-inner-harbor-water-treatment-plant

[4] *See* https://news.cctexas.com/news/releases-20231213.

[5] Request for Appeal Notice with attached letters from the Texas Historical Commission and the Texas Dance Hall Preservation, Inc. (October 23, 2023), https://corpuschristi.legistar.com/View.ashx?M=F&ID=12520661&GUID=2E1F163E-D062-46C3-8294-49CAAAB25CB0; https://corpuschristi.legistar.com/LegislationDetail.aspx?ID=6449449&GUID=8B68E780-9819-4BBD-8274-CE1C04F38DE7.

Sincerely,

*Rev. Henry Williams, Lamont Taylor, Daniel Peña,*
*Jestine Knox, LaMarcus Knox, Monna Lyttle*
Hillcrest Residents Association

*Lamont Taylor, Daniel Peña*
Citizens Alliance for Fairness and Progress

Erin Gaines
Zora Djenohan
Earthjustice
845 Texas Avenue, Suite 200
Houston, Texas 77002
512-720-5354
egaines@earthjustice.org
zdjenohan@earthjustice.org
*Attorneys for Hillcrest Residents Association and*
*Citizens Alliance for Fairness and Progress*


Cc:    Christina Lewis
       Regional Director, Fort Worth Regional Office
       Fair Housing and Equal Opportunity
       U.S. Department of Housing and Urban Development
       Christina.Lewis@hud.gov

       Daria Neal
       Deputy Chief, Federal Coordination and Compliance Section
       Civil Rights Division
       U.S. Department of Justice
       950 Pennsylvania Avenue
       N.W. Washington D.C. 20530
       Daria.Neal@usdoj.gov



NOTICE OF CITY COUNCIL ACTION
FOR APPEAL OF BUILDING STANDARDS
BOARD ORDER ON JANUARY 9, 2024

1/25/2024

**Certified Letter#** 7020 1290 0000 7593 0029

**CAMBRIC PRISCILLA**
**2814 ROGER ST.**
**CORPUS CHRISTI, TX. 78405**

In regard to the: APPEAL OF THE FINAL ORDER OF THE BUILDING STANDARDS BOARD
CASE NO. V184239-071222 for the building(s) or structure(s):
Located at 1214 ½-20 N. STAPLES ST. CORPUS CHRISTI, TX. 78401
Located on the property described as COLONIA MEXICANA LTS 3, 4, 5 & 6 BLK SE/2 E

The City of Corpus Christi City Council's Resolution suspending the Building Standards Board's orders to demolish the dilapidated/substandard structure located at 1214½-20 N. Staples St and the Final Order of the Building Standards Board are enclosed and constitute the final decision of the City of Corpus Christi.

Notice is hereby given that you have failed to meet the condition for suspension of the Final Order of the Building Standards Board of Appeals, Case No. V184239-071222, for 1214 ½-20 N. Staples St. The suspension of the Final Order was specifically conditioned on securing the building within 14 calendar days. Securing the building included erecting a 6-foot-high perimeter fence that completely enclosed the building, with such an enclosed fenced area including the sidewalk directly adjacent to the building. Proper City permits were to be obtained for the perimeter fence, including right-of-way permits.  Securing the building also included boarding doors and windows on the first floor, including the stairwell to the second floor.

An inspection of the property on January 25, 2024, showed that the building was not secured. You failed to erect a 6-foot-high perimeter fence that completely encloses the building. You failed to enclose the sidewalk directly adjacent to the building with a perimeter fence.

Due to your failure to secure the building, the Final Order of the Building Standards Board is no longer suspended. Per the Final Order, the substandard building shall be removed or demolished by the owner(s), lienholder(s), and/or mortgagee(s) within 30 days. If the ordered action is not taken, the City may vacate, secure, remove, or demolish the building. A lien will be placed on the property to cover the costs incurred by the City to vacate, secure, remove, and demolish the structure. Furthermore, criminal prosecution in the Municipal Court will be pursued if the ordered action is not taken. You can be assessed a fine of up to $500.00 each day a violation continues.

**EXHIBIT**

**D**

Or in the **alternative to Demolition within 30 days**, the Board **ORDERS** as indicated by the checked box(s) below:

☐ **DEMOLITION WITHIN 31 TO 90 DAYS**
The dilapidated or substandard building(s) or structure(s) referenced above shall be **removed or demolished** by the owner(s), lienholder(s), and/or mortgagee(s), **within _____ (31 to 90) days**. Further, the owner(s), lienholder(s), and/or mortgagee(s) shall secure the property in a reasonable manner from unauthorized entry while the work is being performed, and work shall be commenced and performed in accordance with the time schedules established by the Board, to wit:

_____
_____
_____
_____

**OR**

☐ **MORE THAN 90 DAYS TO DEMOLISH**
The Board finds that the owner(s), lienholder(s), and/or mortgagee(s) has submitted a detailed plan and schedule for the demolition of the building(s) or structure(s) and the owner(s), lienholder(s) and/or mortgagee(s) has established that the work cannot reasonably be completed within 90 days because of the scope and complexity of the work; therefore, **the Board ORDERS**:

The dilapidated or substandard building(s) or structure(s) referenced above shall be **removed or demolished** by the owner(s), lienholder(s), and/or mortgagee(s) **within _____ days**. Repairs must comply with City Ordinance Section 13-22(g). Further, the owner(s), lienholder(s), and/or mortgagee(s) shall secure the property in a reasonable manner from unauthorized entry while the work is being performed, and work shall be commenced and performed in accordance with the detailed plan and schedule submitted to the Board and approved by the Board. The owner(s), lienholder(s), and/or mortgagee(s) shall submit monthly progress reports to the Code Enforcement Division to demonstrate compliance with the time schedules established for commencement and performance of the work. The detailed plan and schedule approved by the Board is attached and incorporated by reference to this Order and includes the amendments and/or additions noted below:

_____
_____
_____
_____

☐ The Board further finds the above referenced property, including structures or improvements on the property, exceeds $100,000 in total value; therefore, the owner(s), lienholder(s), and/or mortgagee(s) shall **post a cash or surety bond** in an amount adequate to cover the cost of repairing, removing or demolishing the building(s) or structure(s) not later than the 30th day from the date of this Order. In lieu of a bond, the owner, lienholder, or mortgagee may provide a letter of credit from a financial institution or a guaranty from a third party approved by the City.

**OR**

☐ **REPAIR WITHIN 30 DAYS**
The Board finds the substandard building(s) or structure(s) can reasonably be repaired so as to comply with the code; therefore, **the Board ORDERS**:

The substandard building(s) or structure(s) referenced above shall be **repaired** by the owner(s), lienholder(s), and/or mortgagee(s) **within 30 days**. Repairs must comply with City Ordinance Section 13-22(g).

**OR**

☐ **REPAIR WITHIN 31 TO 90 DAYS**
The Board finds the substandard building(s) or structure(s) can reasonably be repaired so as to comply with the code; therefore, **the Board ORDERS**:

The substandard building(s) or structure(s) referenced above shall be **repaired** by the owner(s), lienholder(s), and/or mortgagee(s) **within _____ (31 to 90) days**. Repairs must comply with City Ordinance Section 13-22(g). Further, the owner(s), lienholder(s), and/or mortgagee(s) shall secure the property in a reasonable manner from unauthorized entry while the work is being performed, and work shall be commenced and performed in accordance with the <u>time schedules</u> established by the Board, to wit:

_____
_____
_____
_____
_____

**OR**

☐ **MORE THAN 90 DAYS TO REPAIR**
The Board finds that the owner(s), lienholder(s), and/or mortgagee(s) has submitted a <u>detailed plan and schedule</u> for the **repair** of the building(s) or structure(s) and the owner(s), lienholder(s) and/or mortgagee(s) has established that the work cannot reasonably be completed within 90 days because of the scope and complexity of the work; therefore, **the Board ORDERS**:

The dilapidated or substandard building(s) or structure(s) referenced above shall be **repaired** by the owner(s), lienholder(s), and/or mortgagee(s) **within _____ days**. Repairs must comply with City Ordinance Section 13-22(g). Further, the owner(s), lienholder(s), and/or mortgagee(s) shall secure the property in a reasonable manner from unauthorized entry while the work is being performed, and work shall be commenced and performed in accordance with the <u>detailed plan and schedule</u> submitted to the Board and approved by the Board. The owner(s), lienholder(s), and/or mortgagee(s) shall submit <u>monthly progress reports</u> to the Code Enforcement Division to demonstrate compliance with the time schedules established for commencement and performance of the work. The <u>detailed plan and schedule</u> approved by the Board is <u>attached</u> and incorporated by reference to this Order and includes the amendments and/or additions noted below:

_____
_____
_____
_____
_____

☐ The Board further finds the above referenced property, including structures or improvements on the property, exceeds $100,000 in total value; therefore, the owner(s), lienholder(s), and/or mortgagee(s) shall **post a cash or surety bond** in an amount adequate to cover the cost of repairing, removing or demolishing the building or structure not later than the 30th day from the date of this Order. In lieu of a bond, the owner, lienholder, or mortgagee may provide a letter of credit from a financial institution or a guaranty from a third party approved by the City.

**OR**

☐ **30 DAYS TO SECURE**
The substandard building(s) or structure(s) referenced above shall be **secured** by the owner(s), lienholder(s), and/or mortgagee(s) from unauthorized entry **within 30 days**.

**AND**

☐   **VACATE STRUCTURE(S)**
The Board finds the substandard building(s) or structure(s) is(are) so damaged, decayed, dilapidated, unsanitary, unsafe, or vermin-infested that it creates a serious hazard to the health or safety of the occupants or the public; therefore, **the Board ORDERS**:

The substandard building(s) or structure(s) referenced above shall be **vacated** by the owner(s), lienholder(s), and/or mortgagee(s) **within 30 days or _____ days**. The building(s) or structure(s) shall be **placarded** to prevent occupancy until the building(s) or structure(s) is brought up to all minimum standards of the code by the owner(s), lienholder(s), and/or mortgagee(s). Further, the owner(s), lienholder(s), and/or mortgagee(s) shall **secure** the property in a reasonable manner from unauthorized entry while the work is being performed, and work shall be commenced and performed in accordance with the time schedules established by the Board.

| | | | |
|---|---|---|---|
| Catherine Giffin | FOR/AGAINST/ABSTAIN | Merced Pena | FOR/AGAINST/ABSTAIN |
| Monica Pareso | FOR/AGAINST/ABSTAIN | Carlos Martinez | FOR/AGAINST/ABSTAIN |
| John B. Solberg | FOR/AGAINST/ABSTAIN | | |

Ordered this __28TH___ day of ___SEPTEMBER____, 2023.

_____
Signed under the authority of the Board:
Chair

_____
Signed under the authority of the Board:
Vice-Chair

Filed with the City Secretary:

**Date Filed** 9·29·23     9:12am

_____
Rebecca Huerta
**City Secretary**

It may be necessary for the owner, lienholder, and/or mortgagee to obtain the proper permits before initiating demolition or repairs ordered by the Board. A permit can be obtained at Development Services located at 2406 Leopard Street, Corpus Christi, Texas.

If you have any questions regarding this matter, please contact Code Compliance at (361) 826-CITY.

Sincerely,

Tracey K. Cantu, Assistant Director
Development Services - Code Compliance Division

**Resolution suspending the Building Standards Board's orders to demolish the dilapidated/substandard structure located at 1214½-20 N. Staples St, owned by Priscilla Tryon Cambric.**

**Whereas,** the Building Standards Board (the "Board") held a public hearing on September 28, 2023, at 1:30 pm regarding substandard structures located at 1214 ½-20 N. Staples St and after making certain findings ordered the structure or premises be removed or demolished by the owner, lien holder or mortgagee, within thirty (30) days pursuant to the attached Final Order of the Building Standards Board Case No. V184239-071222;

**Whereas,** Priscilla Tryon Cambric, the owner of the structure at 1214 ½-20 N. Staples St, (the "Appellant"), filed a written notice of appeal of the Board's order with the City Secretary's Office on October 24, 2023, in accordance with Section 13-24 (a) City of Corpus Christi Code of Ordinances (the "Code") and Article VI, Section 2 of the City Charter (the "Charter");

**Whereas,** the filing of the appeals stayed the Board's orders;

**Whereas,** Section 13-24(a) of the Code and Article VI, Section 2 of the Charter authorize the City Council to hear Appeals of the Board's decision; therefore, this Council properly has jurisdiction over these appeals;

**NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF CORPUS CHRISTI, TEXAS, THAT:**

**SECTION 1.** The Council declares the recitals in the above paragraphs are true and correct.

**SECTION 2.** The Final Order of the Building Standards Board of Appeals, Case No. No. V184239-071222, for 1214 ½-20 N. Staples St, is suspended conditioned on property owner compliance with the following conditions:

(1) securing the building within 14 calendar days, starting January 10, 2024 and ending January 24, 2024. Securing the building includes erecting a 6-foot foot-high perimeter fence that completely encloses the building, with such an enclosed fenced area including the sidewalk directly adjacent to the building. Proper City permits must be obtained for a perimeter fence, including right-of-way permits. Securing the building includes boarding doors and windows on the first floor, including the stairwell to the second floor; and

(2) provide the City with a structural engineering report within 60 calendar days, starting January 10, 2024, and ending March 10, 2024.

The Final Order will become effective at such time as the Owner fails to comply with either of the aforementioned conditions.

**SECTION 3.** This decision of the City may be personally delivered to the owner, mailed to the owner by first class mail with certified return receipt requested, or delivered to the owner by the United States Postal Service using signature confirmation service.

**SECTION 4.** The City may vacate, secure, remove, or demolish the buildings and/or relocate the building occupants following 30 days after notifying the property owner of the failure to comply with the condition of the suspension in Section 2.

PASSED and APPROVED on the 9th day of January, 2024.

Paulette Guajardo, Mayor

ATTEST:

Rebecca Huerta, City Secretary

033252



# FINAL ORDER OF THE
# BUILDING STANDARDS BOARD
## Case No. V184239-07122

In regard to the building(s) or structure(s):
located at **1214 ½-20 STAPLES ST. N. CORPUS CHRISTI, TX. 78401**
located on the property described as **COLONIA MEXICANA LTS 3, 4, 5 & 6 BLK SE/2 E**
described as **COMMERCIAL STRUCTURE**

this Final Order is issued pursuant to the authority granted to the Building Standards Board ("Board") of the City of Corpus Christi, ("City"), Nueces County, Texas in accordance with the Charter of the City, Chapter 13 of the City's Code of Ordinances ("Code") and the Texas Local Government Code.

On **September 28th , 2023** the City of Corpus Christi Building and Standards Board held a public hearing and made the following findings regarding the building(s) or structure(s) referenced above:

### FINDINGS:

that a notice of violation and request to correct was sent to the owner(s), lienholder(s), mortgagee(s) and all known interested parties and published in the Corpus Christi Caller Times;

that 30 days have elapsed since the notice of violation was received and/or published and those violations were not cured;

that a complaint was filed with the Chair of the Board and the public hearing was held not fewer than 10 days and not more than 45 days after the complaint was filed;

that proper notice was sent to the owner(s), lienholder(s), mortgagee(s), and all known interested parties, and published in the Corpus Christi Caller Times;

that a public hearing was held during a meeting of the Corpus Christi Building and Standards Board during which all interested persons were allowed to appear and be heard;

that, after considering all testimony, documentation, and information at the public hearing, the building(s) or structure(s) identified above is(are) in violation of the standards set out in the Corpus Christi Code of Ordinances and is(are) dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare;

that the building(s) or structure(s) cannot be repaired because of the refusal of owner or its intrinsic state of disrepair or both and is dilapidated or substandard where the Board orders demolition;

that City will vacate, secure, remove, or demolish the building or relocate the occupants of the building if the ordered action is not taken within a reasonable time.

### ORDER:

**UNLESS SPECIFICALLY SELECTED BY CHECKBOX BELOW, IT IS HEREBY ORDERED:**

that the substandard building(s) and/or structure(s) referenced above shall be **removed or demolished** by the owner(s), lienholder(s), and/or mortgagee(s) **within 30 days**; and

that, if there are items of personal property in the substandard building(s) and/or structure(s) to be demolished, the owner shall remove them within 30 days.



**CODE**
**ENFORCEMENT**

PO Box 9277
Corpus Christi
TX 78469-9277

CERTIFIED MAIL

7020 1290 0000 7593 0029

MATT MANNING
ATTORNEY WEBB CARSON & MANNING
710 MESQUITE ST
CORPUS CHRISTI, TX 78401
V184239-071222 - SS - 1214 1/2-20 Staples ST N-JM