IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PRISCILLA TRYON CAMBRIC | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:24-cv-00041 |
| | § | |
| CITY OF CORPUS CHRISTI, TEXAS, | § | |
| TRACEY CANTU, AND AL RAYMOND | § | |
| *Defendants* | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |

## PLAINTIFF'S FIRST AMENDED PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **PRISCILLA TRYON CAMBRIC**, referred to herein as Plaintiff, complaining of Defendants **CITY OF CORPUS CHRISTI, TEXAS** (hereinafter "City"), **TRACEY CANTU** (hereinafter "Ms. Cantu"), Assistant Director, Development Services, Code Compliance Department and **AL RAYMOND** (hereinafter "Mr. Raymond"), Director, Development Services Department, in their individual capacities, hereinafter called collectively "Defendants," and for cause of action, would respectfully show unto the Court and jury the following:

## I. NATURE OF THE CASE

**THE CLAIM:** Plaintiff advances her claim under 42 U.S.C. §1983. The City of Corpus Christi, Texas, by and through the actions of Defendants Cantu and Raymond, has engaged in impermissible selective enforcement with respect to its code enforcement practices concerning alleged substandard buildings in the City of Corpus Christi, Texas, in violation of the Fourteenth Amendment of the United States Constitution.

The City of Corpus Christi Code Enforcement Division has repeatedly cited Plaintiff's property and sought to demolish her property, despite there being a morass of dilapidated buildings throughout the City of Corpus Christi, with many in demonstrably bad shape being situated within

1

mere blocks of City Hall. The City of Corpus Christi, Texas has a pattern, practice, and custom of selective enforcement, demonstrated by its non-enforcement on many properties throughout the City and seemingly insatiable enforcement on Plaintiff's property.

This selective enforcement has injured Plaintiff, the owner of the sole remaining Black building of its particular historic significance, the Ebony Recreation Spot (formerly known as the Skylark Club and the Fabulous Lounge), with respect to the City's orders to demolish the building in spite of the recognition by the Texas Historical Commission, Texas Dancehall Preservation, Inc., and the Nueces County Historical Commission that this building is of undeniable cultural significance to this community.

## II.    PARTIES

1. Plaintiff, **PRISCILLA TRYON CAMBRIC** is a resident of Nueces County, Texas.

2. Defendant **CITY OF CORPUS CHRISTI, TEXAS** is a political subdivision of the State of Texas and the City of Corpus Christi, Texas, Code Enforcement Division is an agency operated thereunder, falling under the City's Development Services Department.

3. The City of Corpus Christi, Texas, Code Enforcement Division is funded and operated by the City of Corpus Christi, Texas City Council. Mayor Paulette Guajardo is the chief elected officer of the City of Corpus Christi, Texas. City Manager Peter Zanoni is the chief executive officer of the City of Corpus Christi, Texas.

4. Mayor Guajardo and City Manager Zanoni are responsible for implementing the policies and decisions of the City of Corpus Christi, Texas City Council as the City's primary administrators.

5. Mayor Guajardo, City Manager Zanoni, and the City of Corpus Christi, Texas City Council are tasked with appropriating, reviewing, and implementing the City of Corpus Christi, Texas, Code Enforcement Division's budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.

6. Defendant City of Corpus Christi, Texas may be served by and through Mayor Paulette Guajardo, 1201 Leopard St., Corpus Christi, Texas 78401.

2

7. Defendant **TRACEY CANTU** is Assistant Director of Development Services, Code Compliance Division for the City of Corpus Christi, Texas, and at all times material herein was a code compliance officer acting in the course and scope of her employment for Defendant City of Corpus Christi, Texas. She may be served at 2406 Leopard St., 1st Floor, Corpus Christi, TX 78401, or wherever she may be found. Defendant Cantu is being sued in her individual capacity.

8. Defendant **AL RAYMOND** is Director of Development Services for the City of Corpus Christi, Texas, and at all times material herein was acting in the course and scope of his employment for Defendant City of Corpus Christi, Texas. He may be served at 2406 Leopard St., Corpus Christi, TX 78401, or wherever he may be found. Defendant Raymond is being sued in his individual capacity.

### III.    JURISDICTION

9. The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.

10. This Court has jurisdiction of the parties because they are all Texas residents and/or conducting business/government in the state of Texas.

11. This Court also has concurrent jurisdiction with the federal district court over this suit under 42 U.S.C. §1983[3]; and the Southern District of Texas would have supplemental jurisdiction over the state law claims contained therein, as they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[4]

12. Venue in Nueces County is proper in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of events or omissions giving rise to this lawsuit occurred in this county.

13. Venue would also be appropriate in the Southern District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred

---

[3] *Haygood v. Drown,* 556 U.S. 729 (2009).
[4] 28 U.S.C. § 1367.

in Nueces County, Texas, which is in the Corpus Christi Division of the Southern District of Texas.

## IV.    APPEAL FROM THE CITY OF CORPUS CHRISTI CITY COUNCIL'S DECISION TO RATIFY THE BUILDING STANDARDS BOARD RECOMMENDATION TO DEMOLISH THE BUILDING

14. Pursuant to subsection (c) of §13-24 of the City of Corpus Christi Code of Ordinances, Plaintiff commences this suit – a distinct cause of action but simultaneously tantamount to an appeal – from the decision of the Corpus Christi City Council. As mandated by the statute, "The decision of the city council shall be final unless the aggrieved party appeals by instituting suit for that purpose in any court having jurisdiction within fifteen (15) days from the date on which the decision of the city council was rendered."

15. Plaintiff instituted this suit within the 15 day period specified by the ordinance.

## V.    FACTS AND ALLEGATIONS

16. The building at issue — at different times known as the Ebony Recreation Spot, the Skylark Club, and the Fabulous Lounge — is the only remaining structure of its historical significance to African-Americans left standing in this community, particularly in the Northside area known as "The Cut." The building is located at 1214 ½-20 N. Staples St., Corpus Christi, TX 78401.

17. Constructed in approximately 1940[5], the building played host to innumerable luminaries in the Black music and entertainment space, including but not limited to James Brown, Ray Charles, Aretha Franklin, B.B. King, and Roy Tipton.

---

[5] *See* https://texashistory.unt.edu/ark:/67531/metapth1310487/m2/1/high_res_d/Northside_History_Project_Rep%20ort.pdf at pg. 86 (last visited 6 February 2024).

18. The building was owned and operated for decades by Mr. Atlee Chapman, a prominent Black business man and politician in the City of Corpus Christi.

19. Prior to the appeal to the City Council that is part of the basis of this claim, the City of Corpus Christi issued multiple criminal citations on the building (all of which have been continuously reset, awaiting the outcome of the Building Standards Board's decision) and demanded the appearance of Plaintiff before the Building Standards Board on several occasions, including the occasion on 28 September 2023, where the Board voted to demolish the building in the absence of Plaintiff and her counsel, who sought a continuance due to counsel traveling out of town for work, which was communicated to the Board.

20. In multiple appearances before the Building Standards Board and the City of Corpus Christi City Council, Defendants Cantu and Raymond appeared before the respective bodies, arguing vehemently that the building is "substandard" and thus the Board should recommend its demolition.

21. To date, the City of Corpus Christi has not presented evidence, on information and belief, of a *single* complaint by a citizen concerning this building. In contrast, the City of Corpus Christi's Code Enforcement has admitted, on information and belief, that all complaints on the building have been generated by the agency itself.

22. The City has claimed that debris from the roof has blown into the yard of nearby residents – of which there are virtually none – yet has not once presented evidence of complaints or requests regarding the building and potential enforcement by these purported citizens.

23. In advance of the Building Standards Board's decision on whether to recommend demolition of the Ebony Recreation Spot, the Texas Historical Commission[6] and Texas Dancehall

---

[6] Exhibit A.

Preservation, Inc.[7] sent letters of support, requesting that the City of Corpus Christi, Texas suspend its consideration of demolition and allow Mrs. Cambric the opportunity to seek historical preservation protection and renovation for the building. The letters from both organizations encouraged the City of Corpus Christi, Texas to afford Mrs. Cambric the opportunity and sufficient time to restore this building, considering its extraordinary historical significance.

24. The aforementioned letters were sought and procured by a historic preservation officer employed by the City of Corpus Christi. Plaintiff also conferred with this historic preservation officer, permitting him access to the property for the purpose of taking drone photos of the property on 20 July 2023.

25. In late July or early August 2023, Ms. Brandy Black, an architectural historian with Stantec, an engineering firm, conducted a survey on the property with Plaintiff's cooperation.

26. In each prior appearance before the Board, Plaintiff informed the Board of her plans to seek historical preservation of the building and designation by appropriate authorities as a historic landmark, mentioning specifically the Untold Markers program run by the Texas Historical Commission.

27. In one such prior appearance, one of the members of the Building Standards Board suggested that the Board table the discussion of razing this building indefinitely, only to be counseled by a member of the City Attorney's office that the Board was unable to take such an action.

28. Plaintiff also secured a visual inspection report on the building in August 2023, which was tendered to the Building Standards Board.

---

[7] Exhibit B.

29. As mentioned in paragraph 19, *supra*, the Building Standards Board voted, in the absence of Plaintiff and her counsel, to recommend demolition of the property.

30. On 23 October 2023, Plaintiff appealed the Building Standards Board's decision to the City of Corpus Christi City Council.

31. On 12 December 2023, Plaintiff and her counsel appeared before the City of Corpus Christi City Council, arguing that the Building Standards Board's decision was in error and in contravention to the spirit of the statute and the importance of preserving such an important cultural landmark in this community, and specifically to the Black community.

32. The City Council voted to adopt the Building Standards Board's recommendation; however, the vote could not carry the day as the Council lacked a quorum. The matter was reset for presentation to the City Council on 9 January 2024.

33. On 9 January 2024, the City of Corpus Christi, Texas City Council issued an order modifying the 28 September 2023 order of the Building Standards Board, ordering that Plaintiff's property at 1214 ½-1220 N. Staples St., Corpus Christi, TX 78401 be demolished.

34. Following lengthy discussion, the City Council ordered Plaintiff to erect a fence around the entire property, including the sidewalk abutting the front façade of the building. The City Council also ordered Plaintiff to board up and "secure" the first floor of the building to ensure no unauthorized entry to the property by vagrants.

35. The City Council also mandated that Plaintiff procure a structural engineer's report on the building within sixty (60) days of its order. Such time period has not yet elapsed by the time of the filing of this petition.

36. At the time this order was promulgated, certain members of the City Council sought to have the City's "right" to move forward with demolition upon alleged noncompliance vest immediately. Counsel for Plaintiff objected at the time, citing due process concerns. The

7

City disregarded Counsel's objections on the advice of its City Attorney, electing to try to impose an automatically enforceable order for demolition if non-compliance was alleged to be found.

37. The genesis of the mandate for the fencing on the sidewalk came from comments made by Councilmember Dan Suckley on 9 January 2024, who indicated that he thought the fencing appropriate due to the large, neon Ebony Recreation Spot sign affixed to the side of the building, and his concern that it might fall and injure someone walking below.

38. This occurrence was extremely unlikely, considering this building is virtually by itself in the Washington-Coles area of town, which has largely been deserted following decades of disinvestment and a recent "voluntary" relocation program which caused many residents to leave.

39. Notwithstanding this unlikelihood, Plaintiff, seeking to assuage the City Council's safety concerns, removed the sign from the building completely. Neither Code Enforcement nor the City Council requested such a measure, but Plaintiff did so, at her own expense.

40. Plaintiff also incurred the expense of adding additional fencing to the existing fencing already in place.

41. In a letter dated 25 January 2024, Ms. Tracey Cantu, Assistant Director, Development Services – Code Compliance Division, informed Counsel for Plaintiff that the City was of the opinion that Plaintiff had been non-compliant, ordering the building be "removed" within 30 days, lest the city remove the building and place a lien on the property to cover the costs, and/or institute criminal prosecutions for the timeframe after 30 days wherein the building has not yet been razed.[8]

---

[8] Exhibit D.

42. Earthjustice, the premier nonprofit public interest environmental law organization, is currently representing and advocating for the residents of the Hillcrest/Washington-Coles community, particularly representing the Hillcrest Residents Association and the Citizens Alliance for Fairness and Progress in their complaints before the U.S. Department of Housing and Urban Development (HUD).[9] In their letter dated 5 February 2024, the organization delineated some of the City of Corpus Christi, Texas's recent actions, urging HUD to "put a hold on all actions by the City to fund or build the Inner Harbor desalination plant and demolish any historical structures in the Northside while HUD's investigation of our Title VI and Fair Housing Complaint is pending."[10]

43. The Nueces County Historical Commission has also expressed its support for Plaintiff having the opportunity to seek funds – and have adequate time – to endeavor to renovate this historic building, most recently communicating its support during its meeting on 9 January 2024.

**VII.**

**CAUSES OF ACTION**

**COUNT ONE**

**SELECTIVE ENFORCEMENT**

**Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983 Against Defendants City of Corpus Christi, Texas, Tracey Cantu, and Al Raymond**

44.    Mrs. Cambric repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

45.    Defendants City of Corpus Christi, Texas, Tracey Cantu, and Al Raymond, acting under color of law, deprived Mrs. Cambric of the rights and privileges secured her by the

---

[9] *See Hillcrest Residents Ass'n and Citizens All. for Fairness & Progress vs. City of Corpus Christi, Texas, et al.*; Fair Housing Act Case No. 06-23-5804-8; Title VI Case No.: 06-23-4011-6; Section 109 Case No.: 06-23-4011-9
[10] Exhibit C.

Fourteenth Amendment to the United States Constitution to be free from selective enforcement by government actors.

46.     Accordingly, Mrs. Cambric commences this action pursuant to 42 U.S.C. § 1983.

47.     "It is well-established that, as a general matter, the Equal Protection Clause of the Fourteenth Amendment requires that all similarly situated persons be treated substantially alike."[11]

48.     In order to prevail on a "class of one" selective enforcement equal protection claim, [Plaintiff] must show (1) that they were intentionally treated differently from others similarly situated, (2) that there is no rational basis for the difference in treatment, and (3) that the "government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right."[12]

49.     Proof on the third prong of the analysis must show "…that the selective enforcement was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."[13]

## THE CITY OF CORPUS CHRISTI CODE ENFORCEMENT IS NOT APPLYING THE LAW EQUALLY

50.     A short drive around a two-mile radius of the City of Corpus Christi City Hall shows, demonstrably, the lack of even enforcement by Code Enforcement, shown by the morass of buildings in disrepair.

---

[11] *Lundquist v. City of Pasadena*, 2006 U.S. Dist. LEXIS 87793 (S.D. Tex. December 5, 2006) *rev'd*, 525 F.3d 383 (5th Cir. 2008)(citing *Vulcan Materials Co. v. City of Tehuacana*, 238 F. 382, 388-89 (5th Cir. 2001)).
[12] *Mary v. Brister*, 2019 U.S. Dist. LEXIS 49136, at 8-9 (E.D. La. March 25, 2019)(citing *Vill of Willowbrook v.* Olech, 528 U.S. 562, 564 (2000) and Bryan *v. City of Madison, Miss.,* 213 F.3d 267, 277 (5th Cir. 2000)).
[13] *Id.*, at 9 (citing *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003)).





(ILLUSTRATIONS A-B)





(ILLUSTRATIONS C-D)





(ILLUSTRATIONS E-F)





(ILLUSTRATIONS G-H)



(ILLUSTRATION I)

51.     Many of the buildings in disrepair are within a direct line of sight of City Hall, as seen in Illustration I above.

52.     Several of the buildings are in similar disrepair as Plaintiff's property; however, none, on information and belief, have been advocating for demolition at all; and if advocated for, surely not as vehemently. The orange "No Trespassing" signs – and alternatively sprayed-on signs – on many buildings evidence probable decades in which the properties have sat without being demolished.





(ILLUSTRATION J-K)











(ILLUSTRATION L-P)

53.    Allowing such arguably substandard buildings to persist without repeated citation, on information and belief, nor the Assistant Director and Director of the City Department advocated for their demolition creates an undeniable appearance of selective enforcement.

54.    This is especially true considering the City has allowed both the old county courthouse[14] and Hoover Hotel – both a stone's throw from City Hall – to remain standing, despite being in clear disrepair[15]:

---

[14] It is unclear as to what if any authority the City of Corpus Christi has over the old county courthouse, considering it is County property, and thus may not be subject to the purview of the City of Corpus Christi Code Enforcement in any regard. It is illustrative to the point of different approaches – e.g. preservation vs. demolition – but may not be illustrative as to the point of selective enforcement if outside of the City's purview. (*See also*, App'x, at 81-131.)
[15] *See* Exhibits C-E.







(ILLUSTRATIONS Q-S)

55. Most of these buildings, on information and belief, have neither a Black owner nor the immense cultural significance present in Plaintiff's building.

56. Moreover, most of these structures are in moderately to well-populated areas, with respect to both structures and people. Plaintiff's building, as mentioned *supra*, lies out on its own at the edge of a nearly-deserted neighborhood.

57. The City has also selectively enforced the law as it relates to arguably substandard structures with historical significance.

58. Heritage Park, a prominent village of historic homes, was created on information and belief, after the City of Corpus Christi purchased and relocated a number of the homes to their current resting places. Many of the historic markers show that the City itself was involved in the preservation of the properties for the heritage of the City.

























(ILLUSTRATIONS T-EE)

59.     These properties, while preserved long ago, were preserved, on information and belief, with the blessing and cooperation of the City.[16]

---

[16] *See* App'x, at 137 ("Heritage Park itself is not a historical site but was established as a site to place historical homes.")

60.    As recently as 2022, the City of Corpus Christi, through its Redevelopment Officer, conferred with the Texas Historical Commission to discuss a feasibility study for the redevelopment of Heritage Park.[17]

61.    Among other considerations, the Redevelopment Officer wrote in an email that the City was "considering all options for this city owned land and buildings, such as, but not limited to, *full historic renovation of all the homes...*"[18]

62.    This evidences not only the creation of Heritage Park by the City of Corpus Christi, but its continued support and maintenance of the enclave, including continued restoration(s).

63.    Plaintiff has not been afforded an adequate opportunity, despite repeated references to her intention to seek historic preservation status, to do so. Other properties, like the Ritz Theater, have been afforded the opportunity to seek such preservation and restoration despite languishing, shuttered, for decades.

64.    The location of Plaintiff's property – a historical Black, historically disinvested enclave of town – cannot go without mention. The area has been and is still the subject of a "voluntary" relocation program, environmental justice issues, and myriad civil rights issues related to the construction of the new Harbor Bridge.

65.    The selective and Draconian enforcement of Plaintiff's property belies an effort to continue razing the community in which the property lies. Were the sole impetus "enforcement" or "beautification," City of Corpus Christi Code Enforcement would be equally focused on seeking remedies for the buildings illustrated in this petition and the myriad others throughout the City that are similarly situated.

66.    The selective treatment of Plaintiff by the Defendants, collectively, is intentional, on information and belief.

67.    There is no rational basis for the enforcement to which Plaintiff is subject while myriad other buildings in equal or worse condition are not enforced and targeted in the same manner, if at all.

68.    This treatment of Plaintiff, on information and belief, is motivated by improper considerations, including but not limited to the community it lies in and the predominant race of those in the community, including Plaintiff.

---

[17] App'x, at 137.
[18] *Ibid.*

## COUNT TWO

### *Monell* Claim against CITY OF CORPUS CHRISTI, TEXAS

**69.**    Plaintiff incorporates by reference all of the foregoing and further alleges the following:

**70.**    At all material times, Code Enforcement agents of the City of Corpus Christi acted under color of state law, as agents of Defendant City of Corpus Christi, Texas.

**71.**    Defendant Al Raymond was and is the Defendant's policymaker for all matters related to the Code Enforcement for the City of Corpus Christi, Texas, having been delegated the policy-making authority by the City of Corpus Christi City Council, by and through the City Manager.

**72.**    Consequently, the City of Corpus Christi has, had, or ratified the following policies, customs, and/or practices in place when Plaintiff's property was slated for demolition:

   **a.**   Selective enforcement of allegedly substandard properties.

   **b.**   Selective allowance of certain historic properties to have adequate time to seek historic preservation status, while not affording others the same reasonable time to seek such status.

   **c.**   Selective application of criteria for demolition.

**73.**    Director Raymond and his command staff were all deliberately indifferent to the natural byproducts of this policy, practice, and/or custom, of which he was aware, authorized, ratified, accepted, exacerbated, and encouraged, instead of rectifying it and ensuring equal application of the law.

**74.**    It was clear that a constitutional violation was and is a very likely outcome of the ratification, adoption, and promotion of this policy.

**75.**    Director Raymond and his command staff knew or should have known that selective enforcement of the building standards in the City of Corpus Christi would create a divestment of the rights of those against whom enforcement was selectively sought, to wit: their rights to equal protection of the laws under the Fourteenth Amendment.

**76.**    These policies, *supra*, were actually known, constructively known, and/or ratified by the City of Corpus Christi and its policymakers, including Director Raymond, and were promulgated with deliberate indifference to Mrs. Cambric's rights under the United States Constitution. This policy made it highly likely that such constitutional violations as those previously described would occur, under color of state law. The previously mentioned policy was a moving force of Mrs. Cambric's constitutional deprivations and injuries.

## THE RITZ THEATRE IS RECEIVING THE RESTORATION OPPORTUNITY THE EBONY RECREATION SPOT IS BEING DENIED

77.    The Ritz Theatre, a crowning jewel of culture in Corpus Christi, was built in 1929, finally closing its doors in 1989, after sixty years of entertaining audiences.[19]

78.    In its 2019 application for emergency grant funds following the devastation of Hurricane Harvey, CCPATCH – a non-profit group of volunteers who maintain the Ritz, informed the Texas Historical Commission (THC) that the roof of the Ritz was in disrepair, outlining for the THC the steps the group had taken up to that point to prevent further damage to the structure due to the roof.[20]

79.    The application outlines that CCPATCH sought money to conduct a two-phased proposed project, with the first phase addressing the "much-needed roof repairs."[21] In such application, the group outlines some of the damage that has been done to the building, particularly with respect to Hurricane Harvey; noting in particular that a "hatch that gives access to the roof was blown off by the hurricane winds, leaving a large opening for the rain to pour into the projection room."[22]

80.    Like the property the subject of this lawsuit, "the Ritz has been witness to many local and nationally significant times, including the Great Depression, World War II, segregation, and the economic decline of downtown Corpus Christi…"[23]

81.    Notwithstanding it having closed its doors thirty years earlier, CCPATCH wrote, "The Ritz Theatre continues to play an integral role in the remaining historic fabric of downtown Corpus Christi as well as in the world of atmospheric theaters."[24]

82.    Presciently, the application notes that "The Ritz Theatre is an expression of Corpus Christi and the community's values. Restoring the theatre not only preserves the local history, it *also proves to other potential preservation projects that this, too, can happen in Corpus Christi, just as it has happened in other cities.* The community understands the economic, social, and cultural benefits that the restored theatre will bring to the downtown and takes pride in the vision."[25]

---

[19] App'x, at 44.
[20] *Id.*, at 42-46. (*see also* App'x, at 55, depicting an inside photograph of the damage to the building due to the roof's disrepair.)
[21] *Id.*, at 43.
[22] *Ibid.*
[23] *Ibid.*
[24] *Ibid.*
[25] *Id.*, at 49 (emphasis added).

83.     Two years later, building consultants to CCPATCH were still recommending repairs to the roof, which, on information and belief, was still experiencing leaks.[26]

84.     To be sure, the Ritz Theatre is a worthwhile project to preserve a seminal piece of Corpus Christi's past. But so too is the Ebony Recreation Spot, a last-of-its-kind building with great historical significance to Corpus Christi at large and the Black community in Corpus Christi in particular.

85.     The City of Corpus Christi is affording an opportunity to the Ritz that it is not affording to the Ebony Recreation Spot, owned by Plaintiff. In fact, the City's promotion of the Ritz is salient in the two letters of recommendation submitted by Armando Mendez, the chairperson of the Corpus Christi Landmark Commission, and Mayor Paulette Guajardo.[27]

86.     The documentation supporting the application for grant monies for the Ritz is deafeningly silent regarding the City of Corpus Christi Code Enforcement ever citing or attempting enforcement against the Ritz for disrepair as it has repeatedly done to Plaintiff's property.

87.     Those letters of support for the Ritz Theatre joining the National Register of Historic Places were sent to Mr. Gregory Smith, the National Register Coordinator for the Texas Historical Commission on 23 October 2023. Just three months prior to that, Mr. Smith sent the City of Corpus Christi a letter encouraging the City to preserve the property that is the subject of this lawsuit, writing, "Historic music venues and dance halls are integral to understanding Texas' rich cultural heritage, and the Skylark Club/Fabulous Lounge is eligible for listing in the National Register of Historic Places under Criterion A in the areas of Entertainment and Ethnic Heritage/Black at the state level of significance. The building stands as a rare and fragile example of a night club devoted solely to these forms of popular music in Corpus Christi, and we encourage the city and property owner to take steps to secure and preserve this significant property."[28]

88.     The Ritz Theatre, while a worthwhile project, has been afforded the opportunity to go through the preservation process, in earnest, *with the encouragement* of the City of Corpus Christi. Plaintiff's property has not been given adequate time – or a fraction of that provided this property – to undergo the preservation and historical landmark process, despite having at least comparable cultural significance to the city and state.

---

[26] *Id.*, at 68-69.
[27] *Id.*, at 132-34.
[28] *Id.*, at 135.

## VIII.
## DAMAGES

89.    Mrs. Cambric repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

90.    Plaintiff seeks injunctive and monetary relief and for judgment of all the other relief to which she deems herself entitled.

91.    As a direct and proximate result of the occurrence underlying this lawsuit, Mrs. Cambric will suffer:

    a.    The irreparable and irredeemable loss of her historic property.

## IX.
## ATTORNEY'S FEES

92.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## X.
## JURY DEMAND

93.    Plaintiff respectfully requests a jury trial in this matter.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:    (361) 887-1031
Facsimile:    (361) 887-0903

By: */s/ Matthew S. Manning*
    MATTHEW S. MANNING
    State Bar No.: 24075847
    General Correspondence Email:
    matt@wcctxlaw.com
    **\* E-Service Email: service@wcctxlaw.com**
    **\* E-Service is only accepted at the above**
    **designated e-service e-mail address.**

    ATTORNEY FOR PRISCILLA CAMBRIC