United States District Court
Southern District of Texas
**ENTERED**
February 13, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PRISCILLA TRYON CAMBRIC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:24-CV-00041 |
| | § | |
| CITY OF CORPUS CHRISTI, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Priscilla Tryon Cambric owns a property that is in disrepair but has historical value for the community in which it sits. Nonetheless, the City of Corpus Christi (City) has taken code enforcement action seeking demolition of the building. Plaintiff filed this 42 U.S.C. § 1983 action against the City and its code enforcement personnel, Tracey Cantu (Cantu) and Al Raymond (Raymond), asserting Fourteenth Amendment equal protection claims of selective enforcement based on race. D.E. 20. Pending before the Court are Defendants' motions to dismiss Plaintiff's first amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 21, 24.

Cantu and Raymond challenge the pleading of the equal protection/selective enforcement claim and also invoke their qualified immunity defense. D.E. 21. The City challenges both the pleading of the constitutional claim and the sufficiency of the elements required for municipal liability. For the reasons stated below, the motions are **GRANTED**

**IN PART** on the failure to state the equal protection claim and municipal liability and are **DENIED AS MOOT IN PART** regarding qualified immunity.   This action is **DISMISSED**.

### STANDARD OF REVIEW

The test of pleadings under Rule 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources devoted to meritless claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Furthermore, "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). The requirement that the pleader show that he is entitled to relief requires "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. Those factual allegations must then be taken as true, even if doubtful. *Id*. In other words, the pleader must make allegations that take the claim from conclusory to factual and beyond possible to plausible. *Id*. at 557. The Court stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

The Supreme Court, elaborating on *Twombly*, stated, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In dismissing the claim in *Iqbal*, the Court stated, "It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id*. at 681.

Courts do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *Giancarlo v. UBS Fin. Servs., Inc*., 725 F. App'x 278, 282 (5th Cir. 2018) (*citing Southland Sec. Corp. v. INSpire Ins. Sols., Inc*., 365 F.3d 353, 361 (5th Cir. 2004)). In reviewing the factual allegations, the court may also consider: (a) documents attached to the complaint or identified as central to the claims made therein; (b) documents attached to the motion to dismiss that are referenced in the complaint; and (c) documents that are subject to judicial notice as public record. *Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

## FACTS AND PROCEDURAL BACKGROUND

**The Property**. Plaintiff is the owner of the Ebony Recreation Spot[1] located on North Staples Street in Corpus Christi, Texas. D.E. 20, p. 4. The building was constructed around 1940, and "played host to innumerable luminaries in the Black music and entertainment

---

[1]  This building has also been known as the Skylark Club and the Fabulous Lounge.  D.E. 20, p. 4.

space." *Id.* It is undisputed that the building has been vacant for a long period of time and is in serious disrepair.

**Corpus Christi Building Standards Board (Board) Proceedings**. Although they have never cited complaints from the public, the City's Code Enforcement Division repeatedly issued Plaintiff multiple citations complaining of the building's dangerous physical condition. D.E. 20, pp. 1, 5. The matter was placed on the Board's agenda for hearing on several occasions but was repeatedly reset. *Id.*, p. 5. Plaintiff nonetheless appeared on several occasions to explain her intent to seek historical preservation of the property. *Id.*, p. 6.

During the pendency of this matter before the Board, letters of support that cite the historical value of preserving the Ebony Recreation Spot were solicited by, and sent to, the City's historic preservation officer by organizations including the Texas Historical Commission,[2] Texas Dancehall Preservation, Inc.,[3] and Nueces County Historical Commission. D.E. 20, p. 2. Plaintiff granted the City's historical preservation officer access to the property to take drone pictures. *Id.*, p. 6. And Plaintiff further allowed an architectural historian to conduct a structural survey of the building. *Id.* Plaintiff also repeatedly explained to the Board that she intended to seek historical designation and restore the property. *Id.* (referencing the Texas Historical Commission's Untold Markers program). Plaintiff also tendered a visual inspection report to the Board. *Id.*

---

[2] D.E. 1-6, p. 33; D.E. 20-1, p. 135.

[3] D.E. 1-6, pp. 34-35.

Despite Plaintiff's counsel's request for a continuance to accommodate his work travel schedule, the Board set the matter for final hearing on September 28, 2023, at which time it was heard in the absence of Plaintiff and her counsel. D.E. 20, p. 5, 7. Cantu in her role as Assistant Director of Development Services, Code Compliance Division, and Raymond in his role as Director of Development Services had previously appeared before the Board, advocating for the demolition of the building. *Id.*, p. 5. On September 28, 2023, the Board voted to demolish the building, citing uncured violations of the City's building standards which made the facility "dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare." The Board found that it "cannot be repaired because of the refusal of owner or its intrinsic state of disrepair or both and is dilapidated or substandard." D.E. 1-6, p. 45.

**Appeal to the Corpus Christi City Council (City Council)**. On October 23, 2023, Plaintiff appealed the Board's decision to the City Council. D.E. 20, p. 7. At the City Council meetings on December 12, 2023 and January 9, 2024, Plaintiff appeared individually and through her counsel to argue her appeal. *Id*. She cited the letters of support for the property's historical significance and the importance of providing an opportunity for obtaining official historical recognition and restoration, which Plaintiff represented she intended to do. *Id.* at pp. 5-6. Despite those protestations, on January 9, 2024, the City Council rejected Plaintiff's arguments and requests and voted to adopt the Board's recommendation, ordering that Plaintiff's property be demolished. *Id.* The order was

temporarily suspended, however, on the condition that Plaintiff secure the building by boarding it up and fencing it. *See* D.E. 1-6, p. 39.

**Enforcement and Litigation**. By notice letter dated January 25, 2024, Cantu advised Plaintiff and her counsel that the City found that Plaintiff had been noncompliant with the conditions for suspending demolition. D.E. 1-6, p. 39. Citing prior orders to repair or demolish the building, the City ordered that it be removed within 30 days or the City would remove the building and place a lien on the property for the costs of removal and/or refer Plaintiff for criminal prosecution. *Id.*; D.E. 20, p. 8. Plaintiff then filed a lawsuit in state court to block these actions and the City removed the case to federal court. D.E. 1, 1-6. The parties have agreed that the City will not proceed with its threatened enforcement actions pending this Court's review of the case.

Defendants filed their initial Rule 12(b)(6) motions to dismiss which were discussed at the initial pretrial conference. At that time, the Court expressed its concern that the complaint failed to sufficiently allege a similarly situated comparator for selective enforcement or that the actions were the product of racial animus. However, the hearing revealed that Plaintiff had submitted an open records request for the City's code enforcement records of properties slated for demolition in the relevant time period and that the City was inclined to provide that information but needed to resolve some problems with the paperwork before doing so. The Court granted Plaintiff sixty (60) days to file an amended complaint.

Plaintiff filed her first amended complaint (D.E. 20), the allegations of which have been discussed above. She again complains of equal protection violations based on selective enforcement resulting from racial bias. Her allegations are identical to those in the original complaint (D.E. 1-6) with respect to any comparator and racial motivation involved in targeting demolition of her property, although she attached more documents referencing the historical recognition and restoration efforts involved with Heritage Park, the Ritz Theatre, and the1914 Nueces County Courthouse. D.E. 20-1. She now claims that the City selectively chose to foster for historical preservation the homes in Heritage Park and the Ritz Theatre.

Defendants filed motions to dismiss the amended complaint,[4] again complaining that Plaintiff has failed to state a claim under Rule 12(b)(6). D.E. 21, 24. Plaintiff did not file any response to the motions.

## DISCUSSION

### I.    Selective Enforcement Claim

Plaintiff, as a class of one, pleads a violation of the Fourteenth Amendment's Equal Protection Clause in the form of selective enforcement. D.E. 20, p. 9. A class-of-one equal protection challenge requires the pleading of two elements: "[(1)] she has been intentionally treated differently from others similarly situated and [(2)] there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564

---

[4] Plaintiff's amended complaint (D.E. 20) and the motions to dismiss it (D.E. 21, 24) render the initial motions to dismiss (D.E. 7, 9, 10) moot and the Court has terminated them.

(2000) (per curiam). Because the *Olech* disposition did not require it, the Supreme Court expressly declined to reach the issue of whether a third requirement, "subjective ill will," was necessary. *Id.*; *cf. Olech*, 528 U.S. at 566 (Breyer, J., concurring) (stating that an ill will requirement is appropriate to differentiate honest or inept disparities in treatment from those insidious acts that prompt Constitutional protection).

Under Fifth Circuit authority, that third requirement is necessary in selective enforcement cases, such as this one. *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 n.17 (5th Cir. 2000) (requiring an improper motive, such as racial animus, for selective enforcement claims); *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999) (listing improper motives of race, religion, or other arbitrary classification). Plaintiff's pleading acknowledges all three elements as necessary to her claim. D.E. 20, p. 10. Therefore, the Court now considers (A) similarly situated comparators, (B) lack of rational basis, and (c) subjective ill will.

## A. Similarly Situated Comparators

To determine whether persons or groups are similarly situated, the Court must "inquire as to whether they are in all relevant respects alike." *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quotation marks omitted). In this action, the relevant respects are those listed by the City as its ostensible purpose in ordering demolition of the property: a building or structure that is (1) dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare, and (2) that cannot be

repaired because of the refusal of owner or its intrinsic state of disrepair or both.  *See* D.E. 1-6, p. 45.

**Nearby Buildings**.  Plaintiff claims, without specific facts to give the allegations the necessary plausibility, that several dilapidated buildings near City Hall are similarly situated, but have not been selected for demolition.[5] *Id.* at pp. 10, 15, 21. Plaintiff alleges that if the City's purpose in its actions to demolish the Ebony Recreation Spot had been "enforcement" or "beautification," code enforcement agents "would be equally focused on seeking remedies for the buildings illustrated in this petition and the myriad others throughout the City that are similarly situated." D.E. 20, p. 28.

Plaintiff does not plead that those properties suffer from the same risk of structural collapse or safety concerns identified in her building, does not sufficiently allege whether they are in similar states of disrepair according to city ordinances, and does not discuss whether their owners have also been warned and failed to take action to make their property safe for the community through repair, fencing, or boarding up. *See Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003) (holding that to plead that two buildings were "similarly situated," plaintiff had to demonstrate not their physical proximity, but whether they were similarly situated under the state code).  Indeed, several of the pictured buildings are fenced off and/or boarded up, and at least one is on a trailer that indicates it is in the process of being moved.

---

[5]  She also alleges that most of them do not have a Black owner nor do they have the immense cultural significance present in Plaintiff's building.  However, nothing in the pleading indicates who the owners are or what the use of the buildings is or was.  Those allegations are conclusory.

Plaintiff's pleading is based on nothing more than a curbside view of the properties and does not address their individual structural safety, their particular danger to the community, their prospects for repair, or the efforts asked of, and/or provided by, their respective owners. The allegations of their condition, made "on information and belief," are conclusory and speculative on their face.  D.E. 20, p. 15.  Without factual allegations regarding these particular buildings offered as comparators, the allegations are speculative and conclusive and do not satisfy the *Twombly*/*Iqbal* pleading requirements.

**Hoover Hotel and 1914 Nueces County Courthouse**.  While Plaintiff mentions the Hoover Hotel, there are insufficient facts about it to support any element of her case.  D.E. 20, p. 19.  The same is true of the old Nueces County Courthouse.  *See* D.E. 20-1, pp. 81-131.  While she attaches more documents regarding that building, which is clearly fenced off, she does not explain how the City could order its demolition, given its existing historical recognition.  The Hoover Hotel and the old Courthouse are not similarly situated comparators.

**Heritage Park and the Ritz Theatre**.  Plaintiff states that the City purchased and relocated a number of historical homes, placing them in an area known as "Heritage Park." D.E. 20, p. 21. She contends that both Heritage Park and the Ritz Theatre have continuous support for restoration on the basis of their historic significance, while Plaintiff has not been afforded an adequate opportunity to seek historic preservation status. *Id.* at p. 28.

As noted, the City's action with respect to Plaintiff's property is based on its physical characteristics.  Nothing in the code enforcement action involved the City's

assessment of any historical value.  D.E. 1-6, p. 45.  And Plaintiff does not plead that the City's Building Code requires such an assessment.  Therefore, there is no basis for finding these projects to be similarly situated comparators.

> **Summation**.  Plaintiff has failed to plead sufficient facts to demonstrate that there are similarly situated comparators to sustain her equal protection challenge.  For that reason, the Court **GRANTS** Defendants' motions (D.E. 21, 24) and **DISMISSES** the equal protection selective enforcement claim.

## B.  Lack of Rational Basis

Plaintiff does not assert that the City has no rational basis for its Building Code or for assessing her property as structurally dangerous pursuant to that Code.  Neither does she plead any lack of rational basis for finding that Plaintiff has been unwilling or unable to remediate the danger, particularly given the number of opportunities afforded by the City's delays in getting to a final decision on her property and the temporary suspension of the demolition order.  Therefore, she has failed to meet her burden to prove a lack of rational basis.

Instead, she asserts, "There is no rational basis for the enforcement to which Plaintiff is subject while myriad other buildings in equal or worse condition are not enforced and targeted in the same manner, if at all."  D.E. 20, p. 28.  But this pleading merely reasserts the conclusion of an equal protection violation.  It assumes, rather than pleads, the elements of an equal protection claim.  Because—in addition to failing to plead a similarly situated comparator—Plaintiff has not adequately pled the "no rational basis" element, the Court

**GRANTS** the motions (D.E. 21, 24) and **DISMISSES** Plaintiff's equal protection challenge.

### C. Subjective Ill Will

Last, Plaintiff's selective enforcement claim requires proof of some sort of ill will. In that regard, Plaintiff focuses on racial animus. However, Plaintiff has not pled any facts designed to support a finding that any of the Defendants' actions were directly based on a racist motivation. Instead, she relies on inapt inferences regarding much different events and actions taken at much different times. She implies that there must be a racial bias because other properties have been or are being restored. This theory requires too many unfounded—and unpled—inferences.

**Heritage Park**. Plaintiff implies that the City favors white history because it has fostered Heritage Park, an assembly of historic homes, presumably of interest primarily to people who are not of the Black race. First, this is no basis for establishing that such an animus was at work in the decisions regarding Plaintiff's property in 2023 and 2024. According to the City's website, of which this Court may take judicial notice,[6] all of the buildings moved to Heritage Park were built before Plaintiff's building, the latest being 1918.[7] And they were moved to the Heritage Park site as early as 1927, with the biggest

---

[6]  Fed. R. Evid. 201(b); *e.g., Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015) (approving the district court's taking of judicial notice of the website materials on the National Weather Service's website).

[7]  https://www.corpuschristitx.gov/media/faaljsma/heritage-park-history.pdf; *see also* the historical markers and pictures which are a part of Plaintiff's pleading. D.E. 20.

push in the 1980s. None of those decisions have been made since 2007. Therefore, there is no reason to suggest that they reflect the subjective intent of current decisionmakers.

Second, while Plaintiff focuses on certain of those homes, she does not mention the Littles-Martin House situated in the park. That home came through a Black family and was restored by the National Association for the Advancement of Colored People (NAACP). *Id*. The other homes were restored by different interest groups, including the Corpus Christi Arts Council, Corpus Christi Area Heritage Society, Junior League, Camp Fire, Inc., League of United Latin American Citizens, Czech Heritage Society, Irish Cultural House, Inc., and the Veteran's Band of Corpus Christi. *Id*.

Only one of the homes, the Galvan House, was purchased and restored by the City. And that was done so that it could serve as headquarters for its Multicultural Center. *Id*. Nothing about the way Heritage Park was created serves as a proper inference for racial animus against Blacks generally, or against Plaintiff specifically. The fact that the City may be seeking to make changes to Heritage Park and the homes located there does not— as Plaintiff alleges—show an impermissible bias. *See* D.E. 20-1, p. 137. As noted in the referenced exhibit, the Heritage Park houses have already obtained historical recognition and the concern is whether anything more can be done to them, given their status. *Id*.

**Ritz Theatre**. Plaintiff, attaching a number of related documents to her complaint, suggests that the Ritz Theatre demonstrates the City's white favoritism. *See* D.E. 20-1, pp. 2-80, 132-34. However, it is clear from those documents that historical recognition for the Ritz was sought by the Nueces County Historical Commission, and simply endorsed by the

City. *Id*., p. 15, 133-34. And Hurricane Harvey disaster assistance for the Ritz offered through the National Park Service was sought by the Texas Historical Commission—not the City. *Id*., p. 25, 40, 81. Here, the City's historic preservation officer made an effort to assist Plaintiff with her request for historical recognition. D.E. 20, p. 6. But the City is not the authority for issuing historical recognition, and seeking such recognition does not solve the issue of restoration, which Plaintiff does not allege is the City's responsibility.

Plaintiff's complaint fails to demonstrate that the City's code enforcement effort against her or her property is based on racial animus. For this reason, as well, she has failed to plead the third element of her selective enforcement claim. The Court **GRANTS** the motions (D.E. 21, 24) and **DISMISSES** the selective enforcement claim.

## II.   QUALIFIED IMMUNITY

Plaintiff's only constitutional complaint against Cantu and Raymond is violation of the Equal Protection Clause through selective enforcement. Because the Court **DISMISSES** that claim, the Court need not, and does not, address Cantu and Raymond's qualified immunity defense. The motion to dismiss on that basis (D.E. 21) is therefore **DENIED IN PART** as moot.

## III.   *Monell* Claim

Plaintiff asserts a § 1983 claim against the City, claiming that it has implemented a policy of selective code enforcement. D.E. 20, p. 29. "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of the constitutional right."

14 / 15

*Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (*citing Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

Because a municipal liability claim requires a constitutional violation and Plaintiff has failed to adequately plead one, this claim also fails without necessity of considering the remaining elements. *See Jackson v. City of Hearne*, 959 F.3d 194, 204 (5th Cir. 2020) (foreclosing the plaintiff's municipal liability claim because he failed to allege a constitutional violation). The City's motion (D.E. 24) is **GRANTED IN PART** with respect to the municipal liability allegations.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant City's motion to dismiss (D.E. 24) in its entirety. The Court **GRANTS IN PART** and **DENIES IN PART** as moot Defendants Cantu and Raymond's motion to dismiss (D.E. 21). This action is **DISMISSED WITH PREJUDICE** in its entirety.

**ORDERED** on February 13, 2025.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE